# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WARNER BROS. ENTERTAINMENT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 12 C 8483 |
| v. | ) |
| | ) |
| SYNERGEX CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On October 22, 2012, Plaintiff Warner Bros. Entertainment, Inc. ("Warner Bros." or "Plaintiff") filed the present two-count Complaint alleging breach of contract claims against Defendant Synergex Corporation ("Synergex" or "Defendant") based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). In Count I, Warner Bros. alleges a breach of contract claim based on an alleged 2010 settlement agreement with Synergex. In the alternative, in Count II, Warner Bros. seeks to hold Synergex liable under an alleged 2009 agreement with Warner Bros.'s predecessor-in-interest and Synergex. Before the Court is Defendant's motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants in part and denies in part Defendant's summary judgment motion. Specifically, the Court grants Defendant's summary judgment motion as to Count II of the Complaint, but denies Defendant's motion in regard to Count I.

# BACKGROUND

I. **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632. In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1

statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir. 2012). With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

Warner Bros. is a Delaware corporation with its principal place of business in Burbank, California. (R. 25, Def.'s Rule 56.1 Stmt. Facts ¶ 1.) Synergex is a Canadian corporation with its principal place of business in Mississauga, Ontario. (*Id*. ¶ 2.) Synergex is a parent corporation of a number of subsidiaries, including Ditan/Synergex Canada, Inc. ("Ditan") and Synergex Solutions, Inc. ("Solutions"). (*Id*. ¶¶ 5,7.) Ditan was a distributor of video entertainment games in Canada for a number of manufacturers, including Midway Games, Inc. ("Midway"). (*Id*. ¶ 8.) Specifically, Ditan entered into a Distributor Agreement with Midway in 2004 pursuant to which Ditan agreed to act as the Canadian distributor for Midway. (*Id*. ¶ 9.) In 2007, Solutions entered into a Distributor Agreement with Midway pursuant to which Solutions agreed to act as the distributor for Midway in Latin and Central America. (*Id*. ¶¶ 10, 11.) By April 2009, both Ditan and Solutions were having difficulties making payments to their suppliers, including Midway. (R. 30, Pl.'s Rule 56.1 Stmt Add'l Facts ¶ 1.) Also, by April 2009, Ditan's and Solutions' distribution agreements with Midway had expired. (*Id*. ¶ 2.) Both Ditan and Solutions filed for bankruptcy protection under Canadian bankruptcy laws in December 2011. (Def.'s Stmt. ¶¶ 22, 23.)

Midway entered into bankruptcy protection sometime in 2009. (*Id.* ¶ 16.) In April 2009, employees of Synergex, namely, John Smith and Manny Azulay, contacted Midway in an effort to resolve a dispute about certain accounts payable due Midway. (Pl.'s Stmt. Facts ¶¶ 4-6.) Although Smith's email concerning this proposal did not mention Ditan or Solutions, Synergex argues that the parties were attempting to resolve the dispute about the amounts Ditan and Solutions owed Midway. (*Id.* ¶ 7.) In April 2009, Synergex sent Midway checks for $250,630.36 and $143,000 corresponding to the amounts promised as initial payments. (*Id.* ¶ 9.) No further payments were made to Midway, and although Smith and Azulay made further proposals to Midway to resolve the outstanding amounts due, the parties did not reach any further agreements. (*Id.* ¶¶ 10, 11.)

In 2009, Warner Bros. entered into an asset purchase agreement in which it acquired Midway's rights to any of Synergex's accounts receivable owed to Midway. (*Id.* ¶ 12; Def.'s Stmt. Facts ¶ 17.) On December 15, 2009, Azulay sent Robert Lahr at Warner Bros. an email regarding the Midway receivables. (Pl.'s Stmt. Facts ¶ 13.) Attached to the December 2009 email was a breakdown of the outstanding Midway receivables, which totaled $1,444,826.74. (*Id.* ¶ 15.) Azulay's email and attachment proposed a price protection[1] discount of $984,495.16. (*Id.*) On February 12, 2010, Azulay sent Lahr an email to update the price protection discount proposal. (*Id.* ¶ 22.) On February 25, 2010, Lahr responded to an amended proposal, noting that the price protection Azulay sought seemed high, but that he was looking forward to meeting with Azulay later that day. (*Id.* ¶ 24.) Thereafter, Azulay believed that Warner Bros. had agreed to

---

[1] Price protection is a discount on goods already purchased by a customer in which the customer requests a reduction of the effective sales price to protect its margin while discounting or liquidating inventory. (Pl.'s Stmt. Facts ¶ 16.)

the price protection proposal in principle. (*Id.* ¶ 25.) On March 3, 2010, Warner Bros. approved the price protection discount "based on the discussed Synergex settlement payment of $706K." (*Id.* ¶ 27, R. 32-6, Ex. 27, 3/3/10 Lahr email to Azulay.) Indeed, it is undisputed that the Warner Bros.' offer of price protection was expressly contingent upon the $706,000 settlement payment. (*Id.* ¶ 28.) Synergex admits that it never made the $706,000 payment. (*Id.* ¶ 31.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). "A plaintiff must begin to meet this burden by submitting admissible, supporting evidence in response to a proper motion for summary judgment." *Harney v. City of Chicago,* 702 F.3d 916, 925 (7th Cir. 2012).

# ANALYSIS

The parties do not dispute that Illinois law governs the present breach of contract dispute. *See Auto–Owners Ins. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (internal citation and quotation marks omitted). To establish a breach of contract claim under Illinois law, a plaintiff must show: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Hess v. Kanoski & Assoc.,* 668 F.3d 446, 452 (7th Cir. 2012) (citation omitted); *see also Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 560 (7th Cir. 2012).

## I. Count I — Breach of Alleged 2010 Settlement Contract

In support of its breach of contract claim in Count I, Warner Bros. maintains that it entered into a settlement agreement with Synergex via Manny Azulay, who sent an email and attachment to Robert Lahr at Warner Bros. on December 15, 2009. The attachment to the email contained a breakdown of the outstanding Midway receivables that Warner Bros' acquired through an asset purchase agreement with Midway. Azulay's December 15, 2009 email and attachment also proposed a price protection discount. On February 25, 2010, Lahr responded to an amended proposal that Azulay believed was an agreement in principle. Ultimately, Warner Bros. approved the price protection discount contingent on the payment of $706,000.

Synergex, on the other hand, argues that there is not a valid and enforceable contract between Warner Bros. and Synergex. Rather, Synergex maintains that if there was any agreement, it was between its subsidiaries Ditan and Solutions and Warner Bros. Moreover, Synergex asserts that it never approved any agreement to pay Warner Bros. any sum of money,

either on its own behalf, or on behalf of its subsidiaries Ditan and Solutions. In support of this argument, Synergex partially relies on its Answer to the Complaint. (*See* Def.'s Stmt. Facts ¶ 19.) It is well-established, however, that pleadings are not evidence unless they are verified and that district courts may only consider admissible evidence when determining summary judgment motions. *See Devbrow v. Gallegos,* 735 F.3d 584, 587 (7th Cir. 2013) ("verified complaint is the equivalent of an affidavit for summary judgment purposes"); *see also Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009); *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 810 (7th Cir. 2003). In any event, Synergex also relies on the affidavit of Matthew Reinhart, Synergex's former Controller, in which he avers that Synergex never entered into any agreement with Midway or Warner Bros. to assume the debts of Ditan or Solutions. (Def.'s Stmt. Facts ¶¶ 18, 20.) Unlike the Answer, Reinhart's affidavit is of evidentiary quality that the Court can consider at summary judgment. *See Harney*, 702 F.3d 916, 922 (7th Cir. 2012) ("In granting summary judgment, the court may consider any evidence that would be admissible at trial. The evidence need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content.").

At this procedural posture, however, the Court must view the facts and all reasonable inferences in a light most favorable to the non-movant, namely, Warner Bros. *See Norem v. Lincoln Benefit Life Co.,* 737 F.3d 1145, 1148 (7th Cir. 2013). Here, Warner Bros. has set forth sufficient evidence creating a genuine issue of material fact for trial that a contract/settlement agreement existed between Warner Bros. and Synergex. *See Nelson v. Quarles & Brady, LLP,* 997 N.E.2d 872, 892, 375 Ill.Dec. 561, 581 (1st Dist. 2013) ("[C]ontract formation requires only the existence of an offer, an acceptance, and consideration.") (citation omitted). More

7

specifically, Warner Bros. relies on a December 15, 2009 email from Azulay, the Director of Business Development at Synergex, who contacted Robert Lahr at Warner Bros. regarding the Midway receivables. The attachment to Azulay's December 15, 2009 email contained a price protection discount proposal. On February 12, 2010, Azulay emailed Warner Bros. to update Lahr and to further their negotiations, and on February 25, 2010, Lahr emailed Azulay explaining that the proposed price protection seemed high, but that he was looking forward to meeting with Azulay later that day. Thereafter, Azulay believed the parties had an agreement in principle. Moreover, the parties do not dispute that the price protection agreement was contingent on the payment to Warner Bros. of $706,000 and that outstanding Midway receivables totaled $1,444,826.74. Also, the parties do not dispute that Synergex never paid the $706,000.

Further, Azulay explained to Lahr in his December 15 2009 email that Midway's bankruptcy, among other factors, left "Synergex with an open receivable position" and that Synergex personnel had previously worked with Midway to relieve this receivable position. (R. 32-4, Ex. K, 3/15/09 email). This email does not mention Ditan or Solutions. Lahr's March 3, 2010 email to Azulay approved a price protection discount "based on the discussed Synergex settlement payment of $706K." Viewing these facts and all reasonable inferences in Warner Bros.' favor, Warner Bros. has presented specific evidence showing that there is a genuine issue for trial whether the 2010 agreement was with Synergex and not Ditan and/or Solutions.

Nevertheless, Synergex argues that it never accepted the settlement agreement and that there was no consideration underlying the alleged contract. Construing the evidence in Warner Bros.' favor, Warner Bros. has presented sufficient evidence raising the reasonable inference that

8

it offered a price protection discount and that Synergex passed along the price protection to the retailer Electronic Boutique Canada ("EB Games").² (Pl.'s Stmt. Facts ¶¶ 19-21.) As such, Warner Bros. has set forth sufficient evidence showing that Synergex accepted the benefit of the bargain, namely, the price protection that it passed along to EB Games. *See Grot v. First Bank of Schaumburg,* 292 Ill.App.3d 88, 93, 684 N.E.2d 1016, 1020, 226 Ill.Dec. 20, 24 (1st Dist. 1997) ("A party that accepts the benefits of an agreement is estopped from denying its existence or from performing obligations under the agreement."). In addition, it is undisputed that the outstanding Midway receivables as of December 15, 2009 totaled $1,444,826.74, and thus the $706,000 represented a reduction due Warner Bros., which is further consideration supporting the newly-negotiated 2010 agreement. Therefore, the Court denies Synergex's summary judgment motion as to Count I.

**II.     Count II — Breach of 2009 Midway Contract**

In the alternative, Warner Bros. argues that because it acquired Midway's assets, it is entitled to collect any accounts receivable Synergex owed Midway pursuant to an alleged 2009 agreement. To clarify, in April 2009, Synergex's Smith and Azulay contacted Midway in an effort to resolve a dispute about certain accounts payable due Midway. As a result of this effort to resolve the outstanding accounts payable, Synergex sent Midway checks for $250,630.36 and $143,000 corresponding to the amounts promised as initial payments. Synergex made no further payments to Midway, although Smith and Azulay made further proposals to Midway to resolve

---

² Synergex's denial that it passed along the price protection to EB Games raised in its Rule 56.1 Response to Warner Bros.'s Rule 56.1(b)(3)(C) Statement of Additional Facts is not supported by any citation to the record. Accordingly, the Court accepts Warner Bros.' statement as true for purposes of summary judgment. *See Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009).

the outstanding accounts payable.

Synergex argues that although the parties engaged in discussions about paying down the outstanding amounts due Midway, the evidence Warner Bros. provides to support the argument that a valid and enforceable contract existed does not establish the terms of this alleged contract. Indeed, the emails upon which Warner Bros. relies to establish the 2009 contract between Midway and Synergex discuss two different proposals to pay down the outstanding accounts receivable. (R. 30-4, Pl.'s Ex. 4, 5/6/09 O'Desky email; R. 32-1, Def.'s Ex. 1, 4/8/09, Smith email.) The other 2009 emails between Midway and Synergex show that parties agreed to the two payments of approximately $250,000 and $143,000 and that Synergex made these payments. (4/03/09 O'Desky email.) Otherwise, it is not clear what other specific terms Midway or Synergex agreed upon.

Accordingly, Warner Bros.' proffered evidence lacks sufficient detail to create a genuine dispute of material fact for trial regarding its breach of contract claim as alleged in Count II. It is well-established that Rule 56 "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.,* 477 U.S. at 322. As the Supreme Court further explains, "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23 (citation omitted). In sum, Warner Bros. has failed to establish the essential elements of a valid and enforceable contract in regard to the 2009 agreement between Midway and Synergex. The Court, therefore, grants Synergex's summary judgment motion as to Count II of the Complaint.

### III. Distribution Agreement Integration Clauses

Next, Synergex argues that the original distribution agreements with Midway that Ditan and Solutions entered into, as well as a 2007 licensing agreement that Synergex entered into with Midway, preclude Warner Bros.' breach of contract claim due to these agreements' integration clauses which state that the agreements "cannot be changed, modified, amended or terminated except by an instrument in writing executed by the parties." (Def.'s Stmt. Facts ¶¶ 9, 11, 12, 13.) Synergex, however, fails to give a cogent reason why these distribution and licensing agreements govern the newly-negotiated 2010 settlement agreement between Synergex and Warner Bros. Indeed, the terms of the alleged 2010 settlement agreement do not relate to the 2007 license agreement in which Midway authorized Synergex to reproduce copies of designated titles of video games for sale in Mexico, Brazil, Colombia, Chile, and Argentina in exchange for royalty payments. (Def.'s Stmt. Facts ¶ 12.) In addition, based on the facts viewed in Warner Bros.' favor, the alleged 2010 settlement agreement and the 2007 license agreement, as well as the 2004 and 2007 distribution agreements, are separate contracts that involved different terms, parties, and consideration. Moreover, Ditan's and Solution's distribution agreements with Midway had a one-year term, and thus they had expired prior to the formation of the alleged 2010 settlement agreement between Synergex and Warner Bros. (Pl.'s Stmt. Facts ¶ 2.) Synergex's reliance on these distribution agreements is misplaced.

### IV. Statute of Frauds

Finally, Synergex argues that even if Warner Bros. had a 2010 settlement agreement with Synergex, the alleged "oral" agreement is invalid under the statute of frauds. *See* 740 ILCS 80/1. In particular, Synergex characterizes the alleged 2010 agreement as a promise to pay the

debt for another, namely, that under the contract, Synergex would pay its subsidiaries Ditan's and Solutions' debt originally owed to Midway. *See Greenberger, Krauss & Tenenbaum v. Catalfo,* 293 Ill.App.3d 88, 94, 687 N.E.2d 153, 158, 227 Ill.Dec. 230, 235 (1st Dist. 1997) ("A promise to pay for the debt of another, which is not both written and signed by the promisor, has been held unenforceable either at law or in equity."). Warner Bros., however, has presented sufficient evidence creating a genuine material fact for trial that the 2010 settlement agreement was an independent agreement between Synergex and Warner Bros. involving new consideration. *See id.* ("original and independent agreement" that is "based upon new consideration" not "within the scope of the statute of frauds"); *Reddy v. Thakkar,* No. 1-12-0024, 2012 WL 6965076, at *3 (1st Dist. Nov. 21, 2012) (unpublished) ("The Statute of Frauds applies to any promise to pay the debt of another, unless the surety and the creditor make an original and independent agreement, supported by new consideration, for the guaranty.").

Synergex nonetheless argues that even if there was new consideration, this consideration did not directly benefit Synergex, but instead benefitted its subsidiaries Solutions and Ditan. *See Brown & Shinitzky Chartered v. Dentinger,* 118 Ill.App.3d 517, 520, 455 N.E.2d 128, 130, 74 Ill.Dec. 98, 100 (1st Dist. 1983); *Swartzberg v. Dresner ,*107 Ill.App.3d 318, 324, 437 N.E.2d 860, 865, 63 Ill.Dec. 211, 216 (1st Dist. 1982); *see also Reddy,* 2012 WL 6965076, at *4. Warner Bros., however, has presented evidence creating a genuine issue of material fact that Synergex benefitted from the newly-negotiated contract because it passed on the price protection to EB Games, and Synergex has not presented evidence that the price protection actually benefitted either Ditan or Solutions as it argues in its reply brief. The Court therefore denies Synergex's summary judgment motion based on its statute of frauds affirmative defense.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendant's summary judgment motion.

**Dated**: February 10, 2014

                                        **ENTERED**

                                        _____
                                        **AMY J. ST. EVE**
                                        **United States District Court Judge**